# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**TAMEE LYNN COTTRILL,**

      **Plaintiff,**

                                    **Civil Action 2:14-cv-415**
**vs.**                                      **Judge Michael H. Watson**
                                      **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Tamee Lynn Cottrill, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the Chief United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 26), the Commissioner's Memorandum in Opposition (ECF No. 28), Plaintiff's Reply (ECF No. 29), the administrative record (ECF No. 11) and supplemental administrative record (ECF No. 25). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.      BACKGROUND

Plaintiff applied for security disability insurance benefits and supplemental security income in January 2011, asserting disability from Multiple Sclerosis ("MS"), fibromyalgia, chronic fatigue syndrome, hormone imbalance, and a transitional right hip, with an onset date of

January 15, 2005.  (R. at 206, 311.)  An Administrative Law Judge ("ALJ") denied Plaintiff's

application on January 16, 2013.  (R. at 11-25.)  She then brought the current case, challenging

the ALJ's decision.  The Commissioner requested remand because a portion of the hearing held

on November 13, 2012 was not recorded.  (ECF No. 19)  Upon remand the Appeals Council

vacated the ALJ's decision.  (R. at 1126.)  During the pendency of her appeal, Plaintiff filed a

second application for supplemental security income on August 22, 2014, which was denied

initially.  The new application was subsequently consolidated with the remanded claims, and a

supplemental hearing was held on July 21, 2015, in which Plaintiff, represented by counsel,

appeared and testified.  (R. at 1093; 1136-59.)  A vocational expert also appeared and testified at

the hearing.  (R. at 1159-65.)  On November 23, 2015, ALJ Irma J. Flottman issued a partially

favorable decision finding that Plaintiff was not disabled prior to May 1, 2011, but became

disabled on that date.  In addition, the ALJ found Plaintiff to not be disabled within the meaning

of the Social Security Act at any time through June 30, 2009, the date last insured.  (R. at 1093-

1113.)  On June 24, 2016, the Appeals Council denied Plaintiff's request for review and adopted

the ALJ's decision as the Commissioner's final decision.  (R. at 1084-86.)  In February 2017, the

Commissioner moved this Court to reinstate the case, following completion of remand

proceedings under sentence six of 42 U.S.C. § 405(g). (ECF Nos. 23& 24.)

## II.  HEARING TESTIMONY

### A.  Plaintiff's Testimony

At the July 2015 administrative hearing, Plaintiff testified that she lived with her husband

and two children, ages 16 and 13.  (R. at 1136.)  She has a driver's license and went to college

but did not obtain a degree.  (R. at 1137.)

Plaintiff last worked in 2009 at a substitute aide at a school, but she was asked to leave after becoming unsteady on her feet and because she kept dropping things.  (R. at 1138.)  In 2010 Plaintiff was diagnosed with MS, noting that an MRI from 2007 showed lesions on the white matter of her brain.  (R. at 1139-40.)

Plaintiff testified that she was unable to walk in a straight line and could not maintain balance.  (R. at 1140.)  Plaintiff also testified that she lost her grip strength and dropped objects.  (*Id.*)  Plaintiff described her MS as "relapsing remitting . . . it comes and goes and like I was in a flare a couple of years ago where I ended up on a cane and my voice was unsteady."  (*Id.*)  Plaintiff testified that she took steroidal medication when she had flare-ups of multiple sclerosis and that the last time that she took the medication her heart began racing and she required emergency medical treatment, though she could not recall when that was.  (R. at 1141.)  Plaintiff testified that she was unable to recall phone numbers, retain new information, or recall recent or remote events.  (*Id.*)  Plaintiff testified that her cognitive problems began in 2005 to 2007.  (R. at 1142.)

Plaintiff also testified that she has had fibromyalgia since age 18, that it caused "searing hot" pain in her back and shoulder, and that stress and stormy weather aggravated the condition.  (R. at 1143.)  Plaintiff testified that bathing was painful and that a shower felt like "little electrical bolts going into my muscles."  (R. at 1144.)

Plaintiff testified that she suffers migraine headaches when she has a flare-up of MS.  (R. at 1144-45.)  Plaintiff testified that her pain has not been below a 3 on the analog pain scale in more than 10 years.  She described that most days her pain level is at a 7 or 8, and if she is "lucky, at a 4 or 5."  (R. at 1146.)  Plaintiff testified that she took two medications for multiple

sclerosis and non-prescription pain medication, although she used to receive injections through pain management before losing her insurance coverage. (R. at 1142, 1145.) At the time of the hearing, Plaintiff was taking Neurontin for her fibromyalgia. (R. at 1154.)

Plaintiff testified that she began having difficulty ten years prior to the hearing carrying a large tote full of sheets and cleaning supplies at her job cleaning cabins. (R. at 1147.) Plaintiff estimated that 10 years prior to the hearing, she could lift ten pounds in each hand, and could walk 100 paces before needing to stop and rest. (R. at 1147-48.) She further testified that walking caused sciatic pain. (R. at 1148.) Plaintiff testified that even ten years ago she was unable to sit for eight hours a day and that she always had problems reaching and climbing stairs due to fibromyalgia. (*Id.*) Plaintiff also testified that her hands become numb when she holds them at chest level. She said that she has severe wrist pain and untreated carpal tunnel syndrome. (R. at 1157.)

As to her daily activities, Plaintiff testified that she has been sleeping in a recliner for ten to twelve years. (R. at 1149.) She reported that she cooks dinner every night. (R. at 1150.) Plaintiff testified that she goes to the grocery store about once every two weeks and she "pays" for it by being in pain the following three to five days. (*Id.*)

Plaintiff also testified to her mental impairments, noting she has suffered from depression for years and has never been on medications that helped. At the time of the hearing, she was on better medications but still depressed. She commented, "My life has been taken from me and that is something no pill is going to fix." (R. at 1151.) Plaintiff testified that she felt guilty and worthless. (R. at 1152.) Plaintiff also testified that she has impaired concentration and no

friends or family support, except for her husband and children.  (*Id.*)  Plaintiff testified that she has not had friends in five years or more.  (R. at 1153.)

## B.  Vocational Expert Testimony

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past jobs include a teacher's aide, a light exertion, semi-skilled position; a cashier, a light exertion, unskilled position that Plaintiff performed at a heavy level of exertion; a pharmacy technician, at the light exertion, semi-skilled level; and a housekeeper, a light exertion, unskilled position.  (R. at 1160.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE.  (R. at 1160-63.)  Based on Plaintiff's age, education, work experience, and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could not perform her past relevant work, but could perform approximately 675,000 unskilled, light exertional jobs in the national economy such as a hand packer, inspector, and packing and filling machine operator.  (R. at 1161.)  The VE also testified that if the hypothetical individual were to miss over one day of work a month as an unskilled worker, it would lead to disciplinary action and termination eventually.  (R. at 1163.)  The VE further testified that if the individual would be off tasks 10% of the workday "which it sounds like they would be," she would be eventually disciplined and terminated unless an accommodation was made.  (R. at 1164.)

### III. THIRD PARTY STATEMENT

Plaintiff's husband, James Cottrill prepared a third-party function report on Plaintiff's behalf on January 16, 2007.  (R. at 253-60.)   In this report, Mr. Cottrill described Plaintiff's ability to perform activities and get along with family, friends, neighbors or others depending on

her mood, depression and pain level.  (R. at 255-56.)  According to Mr. Cottrill, Plaintiff's activities of daily living consist of the following;

> Wakes up children, help them prepare for school.  Depending on mood may go back to sleep or if able, do light housework, watch TV/listen to music.  In evening, children take a lot of time.  I help her get dinner made, help with kids.  I usually give our daughter baths.

(R. at 253.)  Mr. Cottrill reported that Plaintiff is unable to drive without worry and pain and that she can no longer enjoy her previous hobbies or do yardwork at home.  (R. at 254.)  He also reported that Plaintiff has difficulty sleeping, doesn't change her clothes often, does not bathe often, does not often do her hair, and eats only one meal per day.  (*Id.*)  Mr. Cottrill further reported that Plaintiff is able to help with dishes, laundry, and light cleaning but requires a "long time" because of pain.  (R. at 255.)  Mr. Cottrill stated that Plaintiff can shop for groceries with help but only does so once or twice per month and requires up to four hours to do so.  (R. at 256.)  Mr. Cottrill also stated that Plaintiff can pay attention only in "short spans.  30 min maybe."  (R at 258.)  He further states that Plaintiff can follow written instructions "okay with no distractions and is in a good mood without a lot of depression."  (*Id.*)  Mr. Cottrill reported that Plaintiff can follow spoken instructions "ok if moderately simple."  (*Id.*)

## IV.  MEDICAL RECORDS

### A.  Consultative Evaluation, Dr. Sarver

In February 2008, Gary Sarver, Ph.D., examined Plaintiff for disability purposes pursuant to her original application for benefits.  (R. at 520-27.)  He reported Plaintiff's job history was poor, with a lot of short-term employment and difficulty in job adjustment, and Plaintiff stated she has frequently been fired because of "attendance and my attitude."  (R. at 521.)  Dr. Sarver observed that Plaintiff had a constricted affect and somber mood but was on time, generally

cooperative, 100% intelligible, alert, and fully oriented. (R. at 522.) Dr. Sarver reported no indications of thought disorders, flight of ideas, motoric indications of anxiety, panic attacks, agoraphobia, delusions, hallucinations, psychotic thought processes, tangential thinking, obsessions, or compulsions, and Plaintiff had no difficulty with attention, pace or persistence. (R. at 522-523.) Short-term memory, attention, and long-term memory for remote life events appeared to be functionally intact. (R. at 523.) Plaintiff had no difficulty in filling out the release of information form, and her abstract reasoning and common sense/judgment were within the low average range. (*Id*.) Her independent living skills appeared to be adequate and she reported cooking and helping with dishwashing and shopping. (R. at 524.) She reported smoking one pack of cigarettes daily and minimizing her use of alcohol. (R. at 524-25.) Dr. Sarver diagnosed dysthymia, cannabis abuse (in early sustained remission), and personality disorder with avoidant features. (R. at 525.)

Dr. Sarver opined that Plaintiff's ability to relate to others, including supervisors, appeared to be moderately impaired secondary to her personality disorder, which was predictive of intense and unstable interpersonal relationships. (R. at 525.) Dr. Sarver opined that Plaintiff's ability to understand and follow simple one and two-step job instructions was not impaired, as she appeared to be functioning within the low average range of intellectual ability. (*Id*.) Dr. Sarver opined that Plaintiff's ability to maintain attention and perform simple, repetitive tasks appeared to be variably impaired secondary to her affective instability. (*Id*.) He opined that her ability to manage daily work stresses appeared to be moderately impaired secondary to her personality disorder and concomitant poorly developed ego skills. (*Id*.) Dr. Sarver questioned whether Plaintiff could manage benefits in her own best interest given her unclear history of

substance abuse.  (R. at 526.)  He concluded that she was likely to have difficulty organizing, structuring, and working towards goals, and was likely to have difficulty containing her anger, managing her frustration, and controlling her impulses.  (*Id*.)

## B. Consultative Evaluation, Dr. Miller

In May 2011, Marc Miller, Ph.D., examined Plaintiff for disability purposes.  (R. at 791-96.)  Plaintiff reported she had been married for 19 years and that her marriage was going well.  According to Plaintiff, she gets along well with her children and also has a good relationship with her sister.  (R. at 791.)  Dr. Miller observed that Plaintiff was depressed and tearful but had good eye contact, good hygiene, and average grooming.  (R. at 792.)  Plaintiff was prompt, cooperative, mannerly, aware, talkative, alert, and fully oriented.  (R. at 793.)  Her speech was intelligible and normally paced, thought content was normal, she listened well, and she was able to initiate conversation.  (*Id*.)  She was not forthcoming about past theft from a job or her use of marijuana.  According to  Dr. Miller, he had to directly confront her about those topics.  (*Id*.)  Plaintiff recalled two out of three items after five minutes; recalled seven numbers forward and three in reverse; and spelled the word "world" in reverse with no errors.  (*Id*.)  Dr. Miller found Plaintiff's concentration fair, her problem solving adequate, and her organizational skills moderate.  (*Id*.)  Dr. Miller reported no indication of paranoia or panic attacks.  (*Id*.)  Dr. Miller described her insight and judgment as adequate with fair social adaptation and low average intelligence.  (R. at 793-94.)  Plaintiff reports she is able to drive, take care of her kids, and prepare meals.  (R. at 794.)

Dr. Miller diagnosed dysthymic disorder, generalized anxiety disorder, and a pain disorder.  (R. at 795.)  He opined that Plaintiff has "some difficulty" with respect to

understanding, remembering, and carrying out one and two-step job instructions. (R. at 794.) Although Plaintiff alleged that she is developing dementia, Dr. Miller did not find any objective signs of this, and found her memory unimpaired during the interview. (*Id.*) Dr. Miller concluded that Plaintiff has no significant difficulty with respect to interaction with coworkers, supervisors, and the public. (*Id.*) Dr. Miller opined that Plaintiff has "some impairment" with respect to maintaining attention span and concentration, and appears to have impaired ability dealing with stress and pressure in a work setting. (*Id.*) Dr. Miller opined that Plaintiff appears to be functioning within the average range of intellect. (*Id.*)

## C. State Agency Review

In March 2008, Mel Zwissler, Ph.D., reviewed Plaintiff's record for the state agency pursuant to her original application for benefits. (R. at 528-45.) Dr. Zwissler opined that Plaintiff has mild limitations in activities of daily living, moderate difficulties in social functioning, moderate limitations in concentration, persistence and pace, and no episodes of decompensation of extended duration. (R. at 538.) He concluded that Plaintiff retained the capacity to perform simple routine tasks with minimal social interactions. Dr. Zwissler also gave weight to the opinion of Dr. Sarver. (R. at 544.)

On May 11, 2011, Frank Orosz, Ph.D., reviewed Plaintiff's records for the state agency and opined that Plaintiff has mild limitations in activities of daily living, moderate difficulties in social functioning, moderate limitations in concentration, persistence and pace, and no episodes of decompensation of extended duration. (R. at 72.) Dr. Orosz opined that "limited weight" should be given to Dr. Miller's assessment, finding it vague and overall not very useful, noting that Dr. Miller indicated "some" impairment in multiple areas. (R. at 73.) Dr. Orosz noted that

both consultative examiners found moderate impairment in understanding and memory limitations, and opined that Plaintiff is "capable of understanding and remembering simple 1-2 step to moderate 3-4 step tasks." (R. at 74.) Dr. Orosz opined that although Plaintiff's "preoccupation on her medical issues . . . and self-perceived limitations would negatively impact her in the workplace," she would still be able to "carry out simple and moderately complex tasks" as noted above. He continued that "[s]he can, at the least, engage in superficial social interactions with coworkers, supervisors, and the general public." (R. at 75.) Dr. Orosz concluded that Plaintiff would perform best in a work environment without strict production quotas/standards and where changes to the routine could be explained and demonstrated. (R. at 75.)

In September 2011, Caroline Lewin, Ph.D., reviewed Plaintiff's record upon reconsideration and affirmed Dr. Orosz's assessment. (R. at 100-06.)

## V. THE ADMINISTRATIVE DECISION

On November 23, 2015, the ALJ issued her decision. (R. at 1093-1113.) Plaintiff met the insured status requirements through June 30, 2009. At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant

January 15, 2005, the alleged onset date. (R. at 1096.) The ALJ found that from her alleged

onset date of disability, January 15, 2005, through her date last insured of June 30, 2009,

Plaintiff had the following severe impairments: degenerative disc disease of her lumbar and

cervical spine; myalgia; and affective, anxiety, and personality-related disorders. After the date

last insured, the record additionally documents multiple sclerosis, migraine headaches, chronic

fatigue syndrome, fibromyalgia, pain disorder, and degenerative disease of her knees. (*Id.*) The

ALJ determined that Plaintiff's genitourinary conditions, gastrointestinal complaints, carpal

tunnel syndrome, sinusitis, dysphagia, tobacco abuse, hoarseness, and hypertension are not

severe impairments. (R. at 1098.) She further found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential

process, the ALJ set forth Plaintiff's RFC as follows:

> Prior to May 1, 2011, the date the claimant became disabled, she had the residual
> functional capacity to lift/carry up to 20 pounds occasionally and 10 pounds
> frequently; stand/walk up to 6 hours in an 8-hour workday; and sit up to 6 hours
> in an 8-hour workday. She could do no more than occasionally balance, stoop,
> kneel, crouch, or climb ramps and stairs, and never crawl or climb ladders, ropes,
> or scaffolds. She needed to avoid concentrated exposure to temperature extremes,
> wetness, and humidity, and all exposure to unprotected heights and operational
> control of moving machinery. She could perform simple, routine, and repetitive
> tasks with only occasional changes in the work setting and no strict production
> rate or fast-paced work. She could occasionally interact with the public and
> coworkers.

---

perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and residual
functional capacity, can the claimant perform other work available in the national
economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(R. at 1101.)  In determining Plaintiff's MRFC, the ALJ assigned "significant" weight to Dr. Zwissler's opinion, and "little" weight to the assessments of Dr. Orosz and Dr. Lewin.  (R. at 1106.)  The ALJ gave "some "weight to the assessment of Dr. Sarver.  (R. at 1107.)  The ALJ discussed Dr. Miller's opinion, but did not specifically assign a weight to his opinion.  (*Id.*)

The ALJ also determined that beginning on May 1, 2011, Plaintiff's allegations regarding her symptoms and limitations are generally credible.  Since that date, the record documents worsening symptoms despite treatment.  The ALJ then limited Plaintiff to sedentary, rather than light work, and incorporated a further limitation that she would be absent from work more than one day a month due to chronic pain, fatigue, and headaches.  (R. at 1109.)  The ALJ found Plaintiff disabled as of May 1, 2011.  (R. at 1112.)

Relying on the VE's testimony, the ALJ concluded that prior to May 1, 2011, Plaintiff could perform jobs that exist in significant numbers in the national economy.  (R. at 1111.)  She therefore concluded that Plaintiff was not disabled under the Social Security Act prior to May 1, 2011, but she became disabled on that date and has continued to be disabled.  (R. at 1112.)

## VI.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

12

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"
*Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286
(6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must
"'take into account whatever in the record fairly detracts from [the] weight'" of the
Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting
*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial
evidence supports the ALJ's decision, this Court defers to that finding 'even if there is
substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v.
Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.
1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision
of the Commissioner will not be upheld where the SSA fails to follow its own regulations and
where that error prejudices a claimant on the merits or deprives the claimant of a substantial
right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th
Cir. 2007)).

## VII. ANALYSIS

Plaintiff puts forward two assignments of error. Plaintiff first contends that the ALJ erred
in her treatment of Dr. Miller's medical opinion evidence by failing to indicate the weight, if
any, given to it and by failing to address any of the relevant weight-giving factors as required
under the regulations. In her second assignment of error, Plaintiff contends that the ALJ rejected

her spouse's third-party statement on improper grounds and that any rejection is unsupported by substantial evidence. (ECF No. 26 at 7-12.)

## A. The ALJ Properly Considered Dr. Miller's Opinion Evidence

In her first assignment of error, Plaintiff argues that the ALJ erred by failing to consider Dr. Miller's medical source opinion evidence. (ECF No. 7 at 13.) Specifically, Plaintiff contends that it was error for the ALJ to conclude that Plaintiff is able to "perform simple, routine and repetitive tasks with only occasional changes in the work setting and no strict production rate or fast-paced work." (*Id*.) According to Plaintiff, Dr. Miller's opinion indicates "Plaintiff would have some difficulty in understanding, remembering and carrying out even one and two step job instructions." (*Id*.) Plaintiff asserts that the ALJ's conclusion to the contrary is improper because she did not weigh Dr. Miller's opinion evidence or discuss any of the factors an ALJ is required to consider in determining what weight to give medical source opinions. (*Id.)*

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

14

and the specialization of the source. Where an ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure to explicitly provide the weight assigned is harmless. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 839 (6th Cir. 2005) (harmless error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider medical opinions "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As a preliminary matter, the Undersigned notes that Plaintiff's first assignment of error is moot with regard to the period after May 1, 2011, because the ALJ found Plaintiff disabled as of that date. (R. at 1112.) With respect to the period before May 1, 2011, a review of the record indicates that the ALJ adopted all of Dr. Miller's opined limitations in his RFC, as well as adding others that even Dr. Miller did not find.

In his functional assessment, Dr. Miller opined with respect to four distinct areas of limitation. First, he opined that Plaintiff "abilities and limitations in regard to understanding, remembering, and carrying out one and two step job instructions indicate some difficulty." (R. at 794.) As the ALJ observed, this conclusion is vague and contradicts his own clinical observations, which indicate that Plaintiff is "able to follow one step directions" without

reservations, although his notes do not indicate any observation of her performance or non-performance of two-step instructions. (R. at 793.) Nevertheless, the ALJ's RFC included a limitation to "simple, routine, and repetitive tasks," an indication that she gave this part of Dr. Miller's opinion evidence significant weight. (R. at 1109.)

Second, Dr. Miller opined that Plaintiff's "abilities and limitations with respect to interaction with co-workers, supervisors, and the public indicate no significant difficulty." (R. at 794.) In his RFC, the ALJ goes beyond Dr. Miller's findings and limits Plaintiff to work involving only occasional interaction with the public and coworkers. (R. at 1109.) Third, Dr. Miller opined that Plaintiff's "abilities and limitations in regard to maintaining attention span and concentration indicate some impairment." (R. at 794.) Last, Dr. Miller opined that Plaintiff's abilities and limitations in regard to dealing with stress and pressure in a work setting appear to be impaired." (*Id*.) Again, even though Dr. Miller's opinion evidence is exceedingly vague, the ALJ's RFC limited Plaintiff to "low stress jobs defined as having only occasional changes in the work setting and no strict production rate or fast-paced work." (R. at 1109.) Although the ALJ did not state the weight given to Dr. Miller's medical-opinion evidence, any error in this regard must be considered harmless in light of the fact that the ALJ adopted all of Dr. Miller's opinions and further limited her capacity to perform activities to Plaintiff's benefit in assessing her RFC.

## B. The ALJ Properly Evaluated Mr. Cottrill's "Other Source" Evidence

In her second assignment of error, Plaintiff contends that the ALJ improperly disregarded her husband's "other source" statement regarding his observations of her limitations. (ECF No. 26 at 10.) Specifically, Plaintiff argues that the ALJ based her credibility determination upon improper factors that fatally undermine her findings. (*Id*. at 11.) The Commissioner responds

that the ALJ properly discounted the "other source" testimony and that any error in reason giving is harmless because the ALJ's credibility determination is supported by substantial evidence. (ECF No. 28 at 14.)

It is undisputed that, under the regulations, Mr. Cottrill's statement is "other source" evidence. As described in Social Security Ruling 06–03p, "other source" evidence includes health care providers who are not "acceptable medical sources," such as nurse practitioners, physicians assistants, licensed clinical social workers, and therapists. SSR 06–03p, 2006 WL 2329939, at *2. It also includes, as is the case here, "non-medical sources" such as school teachers, counselors, social welfare agency personnel, family, friends, neighbors, clergy, and employers. *Id.* The Commissioner must consider "other source" evidence but may do so only for the purpose of determining the severity of a claimant's impairments. *Id.* Unlike "acceptable medical source" evidence, it cannot be used to establish the existence of a medically determinable impairment. *Id.*

Further, the Ruling points out that there are two kinds of "non-medical source" evidence. First, there is the "non-medical source" who has seen the claimant in a professional capacity, such as a teacher, counselor, or social worker. *Id.* at *5–*6. As described in the Ruling, when evaluating the first kind of "non-medical source" evidence,

> it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

*Id.* at *5.

The second kind of "non-medical source" is one who has not seen the claimant in a professional capacity in connection with his or her impairments. As described in the Ruling, this kind of "non-medical source" evidence includes a claimant's "spouse, parents, friends, and neighbors." *Id*. When evaluating the second kind of "non-medical source" evidence,

> it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

*Id*.

In her opinion, the ALJ sets forth three reasons for discounting Mr. Cottrill's credibility. First, the ALJ stated that Mr. Cottrill's lack of training "to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or as to the frequency or intensity of unusual moods or mannerisms" renders the accuracy of his observations "questionable." (R. at 1102.) Plaintiff argues that it is improper to consider Mr. Cottrill's lack of medical training in evaluating his credibility. (ECF No. 26 at 11.) SSR 06-03p, however, specifically permits the ALJ to consider, in addition to the enumerated factors, "any other factors that tend to support or refute the evidence" when evaluating evidence from "non-medical sources." SSR 06-03p at *6. In certain cases, a lack of medical training may be a valid basis to discount "other source" evidence, particularly evidence that purports to describe limitations with medical or scientific accuracy. This case, however, is not one of them. Mr. Cottrill's observations are entirely limited to Plaintiff's activities of daily living and the limitations she appears to face in carrying them out. His statements do not purport to make medical conclusions or to measure Plaintiff's limitations with scientific accuracy. It was error to discount Mr. Cottrill's credibility based on his lack of medical training, as Defendant appears to agree in its

18

Response. (ECF No. 28 at 17.) Defendant is correct, nevertheless, that the ALJ's error in this respect is harmless. (*Id.*)

When an ALJ relies on invalid reasons for discounting evidence, it amounts to harmless error so long as valid reasons exist to discount the evidence and substantial evidence exists supporting those reasons. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Here, the ALJ provides two additional reasons for discounting Mr. Cottrill's statement. First, the ALJ found Mr. Cottrill to be an interested party, whose testimony is likely biased in favor of his spouse. (R. at 1102.) Second, the ALJ found Mr. Cottrill's statement to conflict with other evidence in the record. (*Id.*) Courts agree that "an ALJ may give less weight to the testimony of interested witnesses." *Obuch v. Hluchaniuk*, 2009 WL 877697, *18 (E.D. Mich. March 30, 2009). As Plaintiff's spouse, Mr. Cottrill is an interested witness. The ALJ is permitted to take an interested witness' potential bias into account in assessing credibility, although it is not grounds for a complete rejection of the account without some evidence of bias. *Teel v. Comm'r of Soc. Sec.*, No. 1:10-cv-613, 20011 WL 6256952, at *20 (S.D. Ohio Aug. 22, 2011). The ALJ adduced such evidence in comparing Mr. Cottrill's testimony with the other evidence of record.

In contrast to Mr. Cottrill's statement that Plaintiff is mostly inactive with extremely limited activities of daily living, Plaintiff was observed on June 9, 2008 to be "very active, happy, and high functioning." (R. at 586.) Plaintiff herself reported that she was able to do volunteer work as a teacher's aide and expressed interest in becoming licensed. (R. at 580.) Further, Mr. Cottrill stated that Plaintiff is able to pay attention only for "short spans, 30 min. maybe," although Dr. Miller stated that Plaintiff was able to focus throughout his entire hour-long exam, albeit with some difficulty. (R. at 258, 794.) Moreover, Mr. Cottrill stated that

Plaintiff displays paranoia and "fear of things others do not fear," whereas both Dr. Sarver and Dr. Miller reported no indication of paranoia or panic attacks. (R. at 522-523 ,793.) Finally, Plaintiff reported to Dr. Miller that she is able to drive, take care of her kids, and prepare meals, but Mr. Cottrill reported that she is able to do these things only with great difficulty and only allowing for unusually long amounts of time. (R. at 254-255, 794.)

For these reasons, therefore, substantial evidence, supports the ALJ's finding that Mr. Cottrill's testimony conflicts with the record as a whole and, as a result, also supports the ALJ's finding that Mr. Cottrill's testimony is likely affected by his natural bias as an interested witness. Accordingly, the Undersigned finds that substantial evidence in the record supports the ALJ's evaluation of Mr. Cottrill's "other source" evidence.

## VIII. CONCLUSION

In conclusion, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the Undersigned **RECOMMENDS** that the Commissioner of Social Security's decision be **AFFIRMED** and Plaintiff's Statement of Errors be **OVERRULED**.

## IX. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.
Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: January 17, 2018                          _/s/ Elizabeth A. Preston Deavers_
                                                ELIZABETH A. PRESTON DEAVERS
                                                UNITED STATES MAGISTRATE JUDGE